IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD F. BRATEK, et al. | : | CIVIL ACTION |
| v. | : | |
| BEYOND JUICE, LLC, et al. | : | NO. 04-4491 |

MEMORANDUM

**Baylson, J.**                                                                                             November 14, 2005

**I.  Introduction**

      Plaintiffs Ronald F. Bratek ("Bratek") and Philly Juice, LLC filed this action against Defendants Beyond Juice, LLC ("Beyond Juice"), O.L.D., Inc. ("OLD"), Morrie Friedman (Friedman"), and Sally Kline ("Kline") (or collectively "Defendants") on August 6, 2004.  The case was removed to the United States District Court for the Eastern District of Pennsylvania on September 24, 2004.  An Amended Complaint was filed on March 10, 2005.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 due to the diversity of citizenship of the parties.  Jurisdiction is also based on 28 U.S.C. § 1331 due to claims raised by Plaintiffs under the Securities Act of 1933 (15 U.S.C. § 77 et seq.) and the Securities Exchange Act of 1934 (15 U.S.C. § 78 et seq.).

      Presently before the Court are two separate motions to dismiss filed by Defendants.  The first, Defendants' Motion to Dismiss Pursuant to F.R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. No. 3), was filed on October 19, 2004, and specifically argues that the dispute should be submitted to arbitration.  The Court addresses the arbitration issue presented in the first motion in subpart A of this Memorandum.  After a February 9, 2005 Memorandum and Order from this Court granting

in part and denying in part Defendants' Motion to Dismiss, Plaintiffs filed an Amended Complaint on March 10, 2005. Defendants' second motion to dismiss (Defendant's Motion to Dismiss Pursuant to F.R. Civ. P. 12(b)(6) and Motion for More Definite Statement Pursuant to F.R. Civ. P. 12(e) (Doc. No. 9)), was then filed on March 30, 2005. Specifically, this second motion to dismiss argues for the Dismissal of Counts III (securities fraud) and VII (fraudulent transfer). The Court addresses this second motion to dismiss in subpart B of this Memorandum.

    A. **Arbitration Issue**

Defendants have moved for dismissal, or alternatively, to stay this suit based on their contentions that the parties agreed to submit disputes to arbitration. Plaintiffs, an individual and a Pennsylvania limited liability company controlled by the individual Plaintiff, deny that they ever agreed to this arbitration provision.

This Court issued a Memorandum on this issue on May 25, 2005, concluding that the issue could not be decided without an evidentiary hearing, which was held on June 13, 2005. The parties thereafter engaged in settlement discussions, which were unsuccessful, and filed supplemental briefs as of October 31, 2005.

The Court concludes that Defendants, as the parties requesting arbitration, have the burden of proof on this issue. They have failed to satisfy their burden of proof, and thus the Motion to Dismiss or to Stay will be denied. As to the choice of law, the parties have discussed Pennsylvania, New Jersey, and Nevada law. The Court does not find a conflict between or among the laws of these different jurisdictions on the issues presented, but if there was such a conflict, the Court concludes that Pennsylvania law should control because Pennsylvania is the state in which the business transactions between the parties were performed.

The issue presented is a narrow one, specifically as noted above, whether the parties agreed to arbitrate any disputes which arose in the course of their business relationship. There is no question that the parties had such a relationship, and it is obvious that an agreement existed between the parties for the operation of this business. Under modern Pennsylvania contract law, a single signed agreement is not necessary for the existence of an overall agreement, and even if certain material terms are missing in the overall agreements between the parties, the Court can supply such terms.

However, under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (2005), an agreement to arbitrate must be in writing in order to be enforceable; however, there is no specific requirement that the parties actually sign the agreement. Id. §§ 2–4. In this case, the Court finds that there was a dispute between the parties about arbitration in that the Defendants wanted arbitration, but the Plaintiffs were opposed to arbitration. The Court also finds that it was the intention of the parties that a document would be signed on the issue of arbitration, but the Court finds that such a document was never signed by both parties.

There are two principal documents under consideration on this issue. The first is a Letter of Intent which was signed by Plaintiff Bratek individually on January 26, 2002, and by Defendant Beyond Juice, LLC on February 12, 2002, and refers to a "previously agreed upon and executed License Agreement." The fully relevant text reads as follows:

> It is understood, acknowledged and agreed that the following represents the total and complete understandings of all of the parties and that this Letter of Intent and Agreement further sets forth and is incorporated into and made part and partial (sic) of the existing License Agreement.

Letter of Intent, at 1. The letter also states:

3

> If the foregoing correctly sets forth your understanding of our mutual intent, please so indicate by signing and returning to us the Agreement which shall constitute a Letter of Intent and Agreement by and between Beyond Juice, Inc. and Ron Bratek in accordance with the terms and provisions set forth above, and in conjunction with the previously agreed upon and executed License Agreement. This Letter of Intent is made part and partial (sic) of Disclosure documents and the Terms and Conditions contained therein.

Id. at 5.

The problem is that there is no such "previously agreed upon and executed License Agreement" between the parties. The Defendant asserts that the reference is to a License Agreement which does contain an arbitration clause. See License Agreement, at ¶ 14.1. At the evidentiary hearing, the Court heard testimony by Plaintiff Bratek and Defendant Friedman. Other evidence was introduced by testimony, deposition, or documents.

Friedman asserted at the hearing that he saw Bratek sign the Letter of Intent and the License Agreement, after which Bratek then put the agreement in his desk drawer, saying that he wanted to discuss it with his wife. Hr'g Tr. at 42. This testimony by Friedman contradicted his prior deposition testimony where Friedman testified that Bratek filled out the Letter of Intent while the two of them were engaged in a telephone conversation. Id. at 72. No representative of Defendants testified that the License Agreement was ever signed on behalf of Defendants. Defendants never received a signed License Agreement from Bratek. Id. at 83.

The Court finds that Bratek made it clear to Friedman, in their various discussions, that Bratek did not want to be part of any agreement that would require him to arbitrate disputes in Nevada, as was specified in the arbitration clause in the unexecuted License Agreement. The Court finds that although Bratek was lacking in a sound explanation as to why he signed the

4

Letter of Intent with a reference to the License Agreement in it as having been executed, he was the more credible of the two witnesses. It is probable that both parties wanted to proceed with the business notwithstanding their dispute about arbitration. However, there is no satisfactory evidence that both parties agreed to arbitrate their disputes.

The Court finds that Friedman was not a credible witness, most of all because of the substantial contradiction between his deposition testimony and his testimony at the evidentiary hearing, which contained totally inconsistent recollections of the circumstances concerning the alleged signing of the License Agreement by Bratek. Also Defendants have not produced any evidence that the License Agreement was ever executed by the Defendants. The Court also finds the parties discussed their dispute about arbitration, but intended to have a mutually signed document expressing mutual agreement as to arbitration, if they ever reached agreement on that issue. However, the Court concludes that Defendants have not proved any such agreement was ever reached.

The Court finds that the Defendants, as the party seeking to compel arbitration, have failed to satisfy their burden of proving that both parties made a written agreement requiring arbitration, and therefore, the Defendants' October 19, 2004 Motion to Dismiss will be denied.

The Court will now turn to the Defendants' Motion to Dismiss Plaintiffs' Federal Securities Claim.

### B. Motion to Dismiss Pursuant to F.R. Civ. P. 12(b)(6)

Also before the Court is a Motion to Dismiss Count III (securities fraud) and Count VII (fraudulent transfer) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted filed by Defendants on March 30, 2005. Disposition of this motion was also

delayed pending the unsuccessful settlement discussions.

### 1. Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

### 2. Factual Allegations

Plaintiffs' Amended Complaint sets forth the following factual allegations relevant to the motions before the Court. Friedman is an officer, director, and/or shareholder of OLD and functions as the alter ego of both OLD and Beyond Juice. Kline is an officer, director, and/or shareholder of Beyond Juice.

According to Bratek's Complaint, the parties initially were involved in an unsuccessful business called "Beyond Juice." Plaintiffs also allege an agreement for issuance of so-called "founder's stock." Compl. at ¶¶ 30–36. After Beyond Juice failed, Friedman and OLD allegedly solicited Bratek to invest in a business called "Deals on Wheels," a venture involving car lease buy-backs. Bratek was informed by Friedman and OLD that the Deals on Wheels opportunity could be used to recoup his investment in Beyond Juice. Id. at ¶¶ 69–74.

Subsequent to the Deals on Wheels investment, Friedman and OLD solicited Bratek to

invest in Automotive Business Solutions ("ABS"), another business venture based on car leases. After making this investment, Bratek received an ABS stock certificate signed by Kline, President of ABS. The shares of ABS stock were issued to Bratek in order that he might continue his existing relationship with Beyond Juice as well as to ensure that he would forbear any assertion of Plaintiffs' rights against it. Id. at ¶¶ 75–78.

Plaintiffs also allege in the Amended Complaint that Friedman, in anticipation of a lawsuit being filed against him, transferred assets into offshore accounts and into the names of others. These "others" are not named with specificity, nor is it clear whether the "offshore accounts" were in Friedman's own name or those of others. Finally, it is alleged that said transfers by Friedman were made for less than full consideration, rendered Friedman insolvent, and were specifically designed to frustrate and defraud present and future creditors, including Plaintiffs.

### 3. Discussion

#### a. Securities Fraud

A valid claim for securities fraud under § 10(b) and Rule 10b-5 requires that a plaintiff allege that the defendant: (1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or the sale of a security; (4) upon which the plaintiff reasonably relied; and (5) that the plaintiff's reliance was the proximate cause of his or her injury. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 373 (3d. Cir. 2002) (citing In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002)). A plaintiff must allege all of these elements or the complaint must be dismissed. See In re Westinghouse Sec. Litig., 90 F.3d 696, 712–13 (3d Cir. 1996).

The Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4 et seq., functions to impose "another layer of factual particularity to allegations of securities fraud." In re Rockefeller Ctr. Props. Sec. Litig, 311 F.3d 198, 215–16 (3d. Cir. 2002).[1]  As to the scienter requirement, the PSLRA requires that the complaint "with respect to each act or omission, . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

Defendants claim that Plaintiffs have failed to make the required showing of scienter required by § 10(b) of the Exchange Act and the PSLRA.  The issue then is what showings are sufficient to constitute scienter and whether the allegations in the amended complaint meet that standard.

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud . . ., the circumstances constituting fraud shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The particularity requirements of Rule 9(b) have been "rigorously applied in securities fraud cases."  In re

---

[1] Specifically, the PSLRA provides as follows:

In any private action arising under this title in which the plaintiff alleges that the defendant —
   (A) made an untrue statement of a material fact; or
   (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
  the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1) (2005).

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997).

The requirement in the PSLRA that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), overrides Rule 9(b)'s allowance of general pleading as to mental state in Rule 10b-5 actions. In re Advanta Corp. Sec. Litig., 180 F.3d 525, 531 n.5 (3d Cir. 1999).

Plaintiffs in their response have cited to materials outside the pleadings, including the Affidavit of Plaintiff's Attorney, R. James Kravitz ("Kravitz Aff."), attaching certain deposition testimony. The Court will rely only on the Amended Complaint and those attachments which are undisputed transactional documents, in deciding the motion to dismiss. See In re Burlington Coat Factory, 114 F.3d at 1426.

Despite Defendants' claim that Plaintiffs failed to allege "how Defendants are associated, if at all, with the companies whose securities are at issue," the Amended Complaint does appear to establish such ties. In ¶¶ 5–6 of the Amended Complaint, Plaintiffs establish that Friedman and Kline serve in various capacities of Beyond Juice, including as officers, directors, and/or shareholders of that company. Moreover, ¶ 5 notes that Friedman functions as the "alter ego" of both Beyond Juice and OLD. Finally, Exhibit K to the Amended Complaint is a photocopy of a stock certificate granting 160,000 shares of ABS stock to Plaintiff Ronald Bratek on April 19, 2002. This certificate is signed by Defendant Kline as both Secretary and President of ABS.

Paragraph 69 of the Amended Complaint alleges that Friedman and OLD solicited Bratek to invest in Deals on Wheels. While the Amended Complaint alleges no formal connection between Defendant Friedman and Deals on Wheels, this alleged sale of 35,000 shares of Deals

on Wheels securities to Bratek is sufficient to establish such a connection. Similarly, the stock certificate signed in her position as President of ABS is sufficient to establish the connection between that company and Defendant Kline. Paragraph 75 alleges Friedman and OLD solicited Bratek's investment of $160 in ABS by making representations that turned out to be false. Paragraphs 79–81 and 83 allege other specific representations.

Defendants argue that Plaintiffs have not provided sufficient evidence of motive and opportunity to commit fraud. In securities fraud cases, plaintiffs may establish a strong inference of scienter in one of two ways: (1) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." In re Burlington Coat Factory, 114 F.3d at 1418.

Both Plaintiffs and Defendants focus in their briefs on the motive and opportunity method of proof, rather than the conscious misbehavior or recklessness method. Establishing scienter through a "motive and opportunity to commit fraud" requires that "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud." GSC Partners CDO Fund v. Washington, 368 F.3d 228, 237 (3d Cir. 2004). The Amended Complaint contains detailed misrepresentations allegedly made to Bratek, which Defendants made to induce Bratek to invest money or forbear action. As to the sale of securities in this case, Plaintiffs assert that Defendants represented to Bratek that both the Deals on Wheels and the ABS stock sales would allow Bratek to recoup Bratek's investment in Beyond Juice. These representations were false because Deals on Wheels was teetering on insolvency, Compl. at ¶ 71, and ABS never went public, Compl. at ¶¶ 75–78, and the statements were made to Bratek so as to endear him to

Beyond Juice so that he might forbear potential lawsuits in that business relationship.

While it is true that "[b]lanket assertions of motive and opportunity" and "catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme" are insufficient to meet the scienter requirement, In re Advanta, 180 F.3d at 535, the facts alleged in the Amended Complaint surpass these minimal standards. In consideration of detailed allegations about Plaintiffs' and Defendants' ties to Beyond Juice, the false statements alleged, and the money Defendants allegedly received through the sale of securities to Plaintiff Bratek, the alleged benefits to Beyond Juice are sufficiently pleaded as concrete and personal benefits to Friedman and Kline. Plaintiffs have thus sufficiently alleged scienter, and thus a claim for securities fraud under § 10(b) and Rule 10b-5.

### b. Fraudulent Conveyance

The issue in question is whether the Amended Complaint alleges a fraudulent transfer with sufficient particularity. The pleading requirements of fraudulent conveyances are set out by Rule 9(b), which requires that the plaintiff "must plead the circumstances constituting the alleged fraudulent conveyances with particularity." River Road Dev. Corp. v. Carlson Corp., 1990 WL 69085, at *8 (E.D. Pa. 1990). However, Rule 9(b) does not apply to allegations where the law assumes fraudulent intent. Id. at *9. Since fraud does not have to be proven, the pleading requirements of 9(b) are no longer applicable. United States v. Schofield, 152 F.Supp. 529, 531 n.6 (E.D. Pa. 1957). The Pennsylvania Uniform Fraudulent Transfer Act contains a provision allowing for the assumption of fraudulent intent when the debtor makes a transfer or incurs an obligation without receiving a reasonably equivalent exchange, and the debtor is or is likely to become insolvent. See 12 Pa. Cons. Stat. § 5104(a)(2). Plaintiffs correctly note that only the

portion of the fraudulent conveyance claim that alleges actual fraud is subject to the standards of Rule 9(b), see Pl's Resp., at 8, while all allegations of constructive fraud are subject to the liberal notice-pleading standards of Rule 8(a).

The Plaintiffs argue that the Amended Complaint does plead the allegations of actual fraudulent conveyance with the particularity required by Rule 9(b).  Although allegations based on "information and belief" generally do not meet the pleading standards of Rule 9(b), River Road, 1990 WL 69085, at *8, the allegations of fraudulent conveyance made in the Amended Complaint, considering that fraud has been adequately alleged in the other counts which are incorporated by reference into Count VII, warrant the Court in holding that Count VII adequately pleads fraudulent conveyance.  The court in River Road did note that Rule 9(b) does not require "specific dates or amounts of these conveyances." Id. at *9.

The Defendants, in their Motion to Dismiss, also argue that there is no transfer alleged in the Amended Complaint, and that as a result Plaintiffs have failed to state a claim for fraudulent conveyance.  Def's Br., at 7.  The Defendants come to this determination after reading ¶ 127 of the Amended Complaint in conjunction with ¶ 128, which, they conclude, allege only that Friedman moved money to off-shore accounts in his own name.  This, Defendants argue would not be a "transfer" under the definition of the Fraudulent Transfer Acts, since Friedman retained control over those assets at all times. Id. at 8.

Paragraph 127 of the Amended Complaint alleges that the transfer to the offshore account in Aruba was made "into the names of others," and even if Friedman was able to access the funds after the transfer that does not necessarily concede a lack of conveyance.

The Motion to Dismiss will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD F. BRATEK, et al. | : | CIVIL ACTION |
| v. | : | |
| BEYOND JUICE, LLC, et al. | : | NO. 04-4491 |

### **ORDER**

AND NOW, this 14th day of November, 2005, upon consideration of Defendants' Motion to Dismiss Pursuant to F.R. Civ. P. 12(b)(1) and 12(b)(6), (Doc. No. 3), and Motion to Dismiss Pursuant to F.R. Civ. P. 12(b)(6), and for More Definite Statement Pursuant to F.R. Civ. P. 12(e), (Doc. No. 9) , it is hereby ORDERED that the Motions are DENIED.

Defendants shall answer the Amended Complaint within fourteen (14) days.

BY THE COURT:

s/Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\CIVIL\04-4491 Bratek v. Beyond Juice\Bratek 04-4491 Memo re arbitration provision.wpd